167 N.J. Super. 461 (1979)
400 A.2d 1244
LEO MINDEL, PLAINTIFF,
v.
THE TOWNSHIP COUNCIL OF THE TOWNSHIP OF FRANKLIN, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE BUILDING INSPECTOR OF THE TOWNSHIP OF FRANKLIN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 29, 1979.
*463 Mr. John T. Lynch for plaintiff.
Messrs. Seiffert, Frisch, McGimpsey & Cafferty for defendants (Mr. Thomas J. Cafferty appearing).
IMBRIANI, J.S.C.
It is incredible in this day and age that a court should be called upon by a municipality to deny an owner the right to farm his land. But here is such a case. If the municipality is upheld, the result will be to compel the *464 owner to either build residential housing units or suffer his land to lie fallow.
The property is located in an area that now is essentially rural in nature. Many farms dot the area. The township seeks to change the character to one that will be suburban. The beginnings are already present. Nearby is a growing municipal office complex, several churches, schools, a restaurant and a postoffice. Several residential subdivisions have already been built and others are planned.
In 1966 plaintiff, a dentist and investor, purchased two parcels of vacant land separated by a road. One contains 13 1/2 acres and lies in a R-20 residential zone, which neither permits nor prohibits farming. The other contains 4.4 acres and lies in a R-40 residential zone, which permits farming.
Both parcels are leased to a crop farmer. He plants only corn and soy beans. He keeps no animals. The township seeks to restrain him from farming the larger tract because it is not a permitted use.
Plaintiff previously sought a variance to farm. The board of adjustment recommended approval, but the township committee denied the application. An appeal to our courts was unsuccessful.
Plaintiff now attacks the township zoning ordinance. He argues that farming by its nature is a temporary use and, since not specifically prohibited, it should be allowed where, as here, it does not impair or conflict with the purposes of the zoning ordinance. Defendants, he says, are attempting through their zoning ordinance to undermine the Farmland Assessment Act of 1964 (N.J.S.A. 54:4-23.1 et seq.) by preventing plaintiff from qualifying thereunder. To qualify under the act a farmer must commit at least five acres to farming for two years or more. N.J.S.A. 54:4-23.2. The smaller parcel of 4.4 acres falls just short of qualifying.
It is charged that the township's true motive for prohibiting farming in certain zones is to avoid the loss of tax revenues on vacant lands. And in fact, in a February 3, 1976 report to the board of adjustment concerning the property in *465 question, the township planner stated that "the only practical difference between the proposal and the property as it exists now is in its tax status."
The township argues that plaintiff's use of his land for crop farming is inconsistent with its master plan, which anticipates greater population density in this area of the community where it has built costly sewerage, water and road facilities. It calculates that the minimum economic density for such urban services is one residential dwelling unit per half acre. Farming would not be sufficiently intensive to earn the municipality a fair return on its capital investment. It argues that the "proximity of the subject property to the township's center district [i.e., a municipal office complex exists and is being expanded] demand[s] urban compatibility."
The township obviously cannot compel plaintiff to develop his land. So it seeks to eliminate the statutory tax incentive to farm and compel plaintiff to choose between not using his land at all or developing it more intensively.
New Jersey has experienced rapid and dramatic population growth in past decades. For instance, its population in 1930 was 4,041,344; by 1960 it grew to 6,066,782 and to 7,168,164 by 1970. The population of Somerset County has grown even more dramatically, from 65,132 in 1930, to 143,913 in 1960, and 198,372 in 1970. Simultaneously, vast rural areas have given way to commercial and industrial development. A state that was once saturated with farms came to realize that irreversible changes were occurring. Our green outlands were being converted into roads, commercial buildings and unending residential developments.
It was in this milieu that the Farmland Assessment Act was passed. The cosponsor of the Farmland Assessment Act, Senator John A. Waddington, testified before the New Jersey Senate that one of the purposes of this act was to promote "the interests of all the people in New Jersey in maintaining open space, the beauty of our countryside, and in the availability of agricultural products fresh from the farm" *466 (before Senate Committee on Revision and Amendment of Law, Public Hearing, April 15, 1963, at 3). He also noted the desirability of "providing relief to city dwellers who need the breathing space of green belt parks and rural scenery." Id. at 5.
As a result of the Farmland Assessment Act municipal governments, in designing a zoning scheme, may not longer be parochial. They must consider the "interests of all the people in New Jersey." While the State properly applied its zoning power in the past to assist and be compatible with our growing population and expansion of commercial development, it became clear to the Legislature in the 1960's that a change of policy was needed. Open spaces had to be preserved while the State formulated necessary programs. The change could not occur overnight. Time was needed. Time could be obtained either by outright purchases of such lands (which patently involved unacceptable costs) or by providing tax incentives to induce owners to withhold development of their vacant and open lands. The latter approach was adopted.
The Legislature recognized the changing conditions in New Jersey and acted. Now municipal governments, which have primary responsibility in matters of zoning, and the courts must do likewise. And our Supreme Court has said that "when conditions change, alterations in zoning restrictions * * * and judicial attitudes * * * [should] not be long delayed." Pierro v. Baxendale, 20 N.J. 17, 29 (1955). And when local governments fail to do so, courts must set aside contrary action. As said in Southern Burlington Cty. N.A.A.C.P. v. Mt. Laurel Tp., 67 N.J. 151 (1975):
* * * it is fundamental and not to be forgotten that the zoning power is a police power of the state and the local authority is acting only as a delegate of that power. * * * So, when regulation does have a substantial external impact, the welfare of the state's citizens beyond the borders of the particular municipality cannot be disregarded and must be recognized and served. [at 177]
*467 Clearly, New Jersey now favors preservation of farmland and open spaces over that of development for residential or commercial uses. Or even over uses which maximize municipal tax revenues.
Indeed, much has been said of late, that the policy in this State should be to diminish the growth of residential building in our rural and semi-rural areas and encourage residence within our cities. Such a policy may well be implicit in an expansive view of the Farmland Assessment Act.
The township argues that Mt. Laurel compels a municipality to provide its fair share of housing, which is what defendant seeks to accomplish. It notes that farming is already permitted in 72% of the township. But it is one thing to provide sufficient areas within a municipality where housing for the poor and middle class is permitted and something entirely different to compel an owner under the guise of a zoning regulation to build housing units. The former is permissible. But the latter is not.
The proofs show a great demand for farmland in this area. Local farmers actively bid against each other whenever farmlands become available. Cultivation here fills this demand.
Adverse impact on adjoining owners from farming is minimal. Active cultivation that may result in dust and noise from farm machinery will occur only two to four days a year. There are no chickens, pigs or animals that some may find distasteful.
The benefits from continued farming are enormous. And this without detriment to the health, safety or welfare of the public. On the other hand, the evidence demonstrates that the only respect in which farming of this land is offensive is that it is not more economically lucrative to the Township.
Since plaintiff is not a farmer, but an investor, it is likely that, as the surrounding community develops, market forces will take their natural course and the land will probably become more valuable. Normally its residential development value will far surpass its value as a farm. At some point he, *468 or his heirs, will most likely sell the land. Then the township will most likely see development of the property consistent with its master plan. Of course, during the interim, plaintiff assumes the risk the state adopt a policy or program designating his lands for open spaces forever.
In the meantime, however, the reduced tax assessment provided by the Farmland Assessment Act will have served its purpose, which is to induce property owners to defer development of their lands. This delay will provide the Legislature with additional time to provide for open space by means of Conservation Easements, Green Acres projects, and other means. (Senate testimony, supra at 7).
A court cannot pass upon the wisdom or lack of wisdom of an ordinance. It may invalidate a zoning ordinance only if the presumption in favor of its validity is overcome by a clear affirmative showing that it is arbitrary or unreasonable. Hudson Circle Servicenter, Inc. v. Kearny, 70 N.J. 289, 298-299 (1976).
Kozesnik v. Montgomery Tp., 24 N.J. 154, 169 (1957), noted that there is no rule of law, statutory or constitutional, which ordains that any use has an exalted position in a zoning scheme entitling it to move everywhere as of right. Every case involves a question of reasonableness under the circumstances. As the court stated in J.D. Constr. v. Freehold Tp. Bd. of Adj., 119 N.J. Super. 140 (Law Div. 1972),
* * * the regulation must be reasonably calculated to meet the evil and not exceed the public need or substantially affect uses which do not have the offensive character of those which cause the problem sought to be ameliorated (citations omitted). The regulation must not impress unnecessary and excessive restrictions on the use of private property.
The party attacking the validity of a zoning ordinance has a heavy burden of affirmatively showing that it bears no reasonable relationship to the public health, morals, safety, *469 or welfare. Barone v. Bridgewater Tp., 45 N.J. 224, 226 (1965).
The specific facts of this case convince this court that the strict application of the township zoning ordinance to plaintiff's land is unreasonable and arbitrary.
The benefits to both the public and plaintiff from farming are clear. What harm or evil would befall the township if this land was to be farmed rather than lie fallow? Other than the loss of some tax revenues, this court can perceive none. Farming is a temporary use. No permanent buildings or structures will be built that will impede or prevent a conversion to residential use whenever the owner so desires. The use could be changed at any time.
Here we must seek to balance the application of two strong policies of the state. One to preserve open spaces, as expressed in the Farmland Assessment Act, and the other to permit a municipality to design its own zoning scheme. If no conflict exists, each statute shall be upheld and applied. But where a conflict appears, as here, then the court must uphold that policy which will do least violence to public policy as expressed in both statutes. In this case to permit farming will uphold the purposes of the Farmland Assessment Act without, as the court has noted, harming or doing violence to the purposes of the zoning statutes.
The court is mindful that the technique employed by plaintiff in this proceeding is similar to an application to a board of adjustment for a variance, which plaintiff previously filed and lost. Is it entitled to two bites of the apple? There is precedent for this relief. In Delawanna Iron and Metal Co. v. Albrecht, 9 N.J. 424 (1952), an owner was denied a variance, but later exempted from certain terms of a licensing ordinance because of the absence of a rational relation between the benefit sought and the public interest designed to be served by a strict enforcement of the ordinance.
So here, too, strict enforcement of the zoning ordinance prohibiting farming operations by plaintiff on his 13 1/2-acre parcel in the R-20 residential zone bears little, if any, *470 rational relation to the benefits sought by the township. The township is enjoined from prosecuting plaintiff for farming this land.
This holding is limited to the facts in the present matter. This decision does not say that farming must be allowed anywhere throughout the municipality. The township is free to defend its zoning ordinance where different types of farming or different neighborhood characteristics result in measurable detriment to overriding zoning considerations.