LOU FERRARO AND HAZLET AUTO CLEAN, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. THE ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF HOLMDEL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 13, 1988—Decided September 28, 1988.

Before Judges ANTELL, DREIER and BROCHIN.

*Reussille, Mausner, Carotenuto, Bruno and Barger,* for appellant (*Anthony T. Bruno,* on the brief).

*Kramer & Gordon,* for respondent (*Ronald H. Gordon,* on the brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant, Board of Adjustment of the Township of Holmdel, appeals from a judgment of the Law Division determining that the Township retained no zoning jurisdiction over the portion of plaintiff's property located in Holmdel and on which plaintiffs, the owner and potential operator, intended to build a car wash. The parcel in question lies ⅔ in the Township of Hazlet[1] and ⅓ in the Township of Holmdel.[2] The Hazlet portion is within the Business Highway Zone and comprises an area of 39,700 square feet. The Holmdel portion is zoned residential and contains approximately 17,800 square feet.

In 1962 the adjoining Townships, as part of a comprehensive agreement allocating the assessment of 11 parcels, provided that five parcels were to be assessed by Hazlet (then called the Township of Raritan) and the remaining six by the Township of Holmdel. Not within the resolution itself, but within a premise clause, each municipality noted:

> Whereas it is agreed between the respective townships that municipal services should be rendered by the taxing district.

The Townships, however, "resolved" only that the lots be assessed as scheduled. The taxing authority over the lot in question was transferred to the Township of Hazlet.

In 1962 the sole statutes governing municipal agreements concerning property divided by a municipal boundary line were *N.J.S.A.* 54:4–25 (permitting a municipality to agree that an adjoining municipality assess the entire tract), *N.J.S.A.* 40:43–72 (permitting municipalities to determine by resolution which municipality should have "sole supervision" of a building or buildings divided by a municipal boundary), and *N.J.S.A.* 40:43–73 (stating that the supervising municipality was to provide the "same services as are furnished to buildings located wholly

---

[1] The lot is identified on the Hazlet tax map as block 243, lots 1, 2, 3, 3.01, 4 and 5.

[2] The Holmdel portion is designated as tax block 50.19, lots 86.01 and 86.02.

within its boundaries," and further that such municipality would have the "sole power to issue all licenses and permits required for such building or buildings"). These latter statutes were repealed by *L.* 1979, *c.* 181 § 3, effective August 29, 1979 (*N.J.S.A.* 40A:13–30) as part of the revision of the Municipalities and Counties Title of the New Jersey Statutes.

As the property in question was vacant land, *N.J.S.A.* 40:43–72 and 73, dealing with buildings, had no direct application. However, the Townships' mutual recognition of the duty of the taxing district to provide services appears to have been at least some attempt to transfer the power to supervise the property despite the fact that there were no buildings on the land.

Title 40A revised and updated the repealed statutes in *N.J.S. A.* 40A:13–19 and 20. *N.J.S.A.* 40A:13–19 expanded the application of *N.J.S.A.* 40:43–72 to include "lands and buildings" and permitted the municipalities by resolution to determine "which municipality shall have sole supervision of the lands and buildings." *N.J.S.A.* 40A:13–20 updated *N.J.S.A.* 40:43–73. It required the furnishing of uniform services and gave the supervising municipality the "sole power to issue all licenses and permits required for such lands or buildings." The Townships of Hazlet and Holmdel took no action after the passage of these statutes either to expand or retract the powers ceded or obligations undertaken under their earlier resolutions. We cannot discern from this record whether the continued conduct of the municipalities evinced an intention to invoke the broad transfer of rights and obligations encompassed by the revised statutes.

Plaintiffs obviously assumed that Holmdel had retained the power to zone and therefore applied for a variance before the Holmdel Board of Adjustment. After the variance was denied, they instituted an action in lieu of prerogative writs to review the decision. At the pretrial conference, however, the trial judge for the first time raised the issue of whether Holmdel retained zoning jurisdiction over the Holmdel portion of the property. He determined "that Holmdel lacked the proper

jurisdiction to rule on the case," reasoning that the recital which expressly transferred the taxing power also evidenced an agreement whereby Holmdel "relinquished any right to have supervision over this land." He supported this conclusion by reference to the "services" obligation in the premise clause quoted earlier. The court then applied the later-enacted *N.J.S. A.* 40A:13–19, and through an interpretation of the ambiguous resolution, held as a matter of law that Holmdel retained no authority to determine the uses to which the property could lawfully be put. While we agree that this might be an acceptable solution, it should not have been made without a factual inquiry.

As noted earlier, the operative ("resolved") sections of the resolutions tracked only the provisions of *N.J.S.A.* 54:4–25, which related to the assessing of the lots. But, the resolutions also included the agreement that each municipality would be the sole provider of services to the lots it assessed, an agreement then authorized by statute only with respect to buildings. By the use of the word "services" the municipalities may well have attempted to take advantage of the provisions of *N.J.S.A.* 40:43–72 and 73 which required the furnishing of services to buildings, notwithstanding that the property was vacant land.[3] However, the court should examine the municipalities' contemporaneous and subsequent actions or other facts which may develop at trial to determine their actual or implied intentions.

The resolutions in question, passed in 1962, may after trial, be found to evince an intention to transfer full supervisory powers. If so, as a matter of law the resolutions would have been validated by *N.J.S.A.* 40A:13–19 and 20, and would carry with them the new statutory powers. These resolutions remained on the municipal books, unrepealed and unamended, when the Legislature specifically authorized such agreements

---

[3]We note that *N.J.S.A.* 40:43–73 even then provided that the rendering of services carried with it "the sole power to issue all licenses and permits."

with respect to vacant land in 1979. While better form might have required the municipalities to ratify their earlier resolutions after the statutory amendment, the continued allocation of assessments in accordance with the resolutions even to the present date, evinces a clear intention that the resolutions remain in effect. We reiterate that it is a permissible determination that the Townships have availed themselves of whatever powers are conferred by *N.J.S.A.* 40A:13–19 and 20 with respect to the property in question.

■ We agree with the trial judge that where municipalities have unambiguously agreed pursuant to *N.J.S.A.* 40A:13–19, or, after a factual hearing, are deemed to have agreed, that one of them shall have "sole supervision of the lands and buildings," such agreement includes, under *N.J.S.A.* 40A:13–20, the "sole power to issue all licenses and permits required for such lands or buildings." It follows that the approval or denial of building permits would fall under this latter authority. Further, we extrapolate from these conclusions that since the "sole supervision of the lands" is also transferred, any variance application should be heard by the board of adjustment of the community to which such supervisory power is transferred. Therefore, under *N.J.S.A.* 40:55D–70, a variance would be heard by the board of adjustment of the supervising municipality, rather than that of the municipality where the property was located.

The question remains, however, whether the "sole supervision" of the land would also include the actual power to zone it. While the statutes we are interpreting are comprehensive, they do not change the municipal boundary line. *Compare N.J.S.A.* 40A:7–12 *et seq.* (relating to annexation). The property in question remains a part of its original municipality, and under *N.J.S.A.* 40:55D–62 is initially subject to that municipality's zoning. While the power to supervise has been transferred, the transferee municipality must exercise that power in order to implement the transfer of zoning power. The original grant of

the zoning power to the transferor is eroded only by the exercise of the specific grants in *N.J.S.A.* 40A:13–19 and 20 giving the supervising municipality both the "sole supervision of the lands" and the "sole power to issue all licenses and permits required for such lands or buildings," which powers we find must include the authority to zone. As the amended statutes may apply to the earlier agreement between Hazlet and Holmdel, Hazlet's Township Committee may be found to have the power to zone the disputed parcel,[4] and its building inspector and Board of Adjustment similarly may have the power to issue or direct the issuance of a building permit.

We therefore determine that the Township of Hazlet may, after a proper evidentiary hearing, be found to possess the paramount power to zone even that portion of the property that lies outside its boundaries; but until it exercises that power, the zoning in effect under the Holmdel ordinance will control. If Holmdel has ceded "sole supervision," then the application for a building permit must, under *N.J.S.A.* 40A:13–20, be made to the Township of Hazlet. As the use plainly is not now permitted in the zone, and unless the zoning is changed to permit the requested use, the variance application would be made to the Board of Adjustment of the Township of Hazlet, which, applying the standards of *N.J.S.A.* 40:55D–70 d, could grant or deny a variance.

For the reasons stated herein, we cannot on this record determine whether the trial judge was correct in ruling that the Board of Adjustment of the Township of Holmdel was without jurisdiction to hear the variance application. If he was correct, no building permit may be issued unless and until a variance is granted by the Board of Adjustment of the Township of Hazlet or the zoning of the property is changed by Hazlet. If there

---

[4] Unless or until the zoning is changed, the property in question remains zoned by and under the residual authority of the Township of Holmdel. Otherwise we would be forced to say that the property is unzoned, a result inimical to the purposes of zoning. *N.J.S.A.* 40:55D–2.

was no transfer of the full power of supervision, then the application before the Holmdel Board was proper, and the trial court, as initially requested, should review the denial of the variance for legal error.

The matter is remanded to the Law Division for further proceedings.  We do not retain jurisdiction.