BROTHERHOOD OF RAILROAD TRAINMEN, *ET AL.*, APPEL-
LANTS, v. DWIGHT R. G. PALMER, COMMISSIONER,
NEW JERSEY STATE HIGHWAY DEPARTMENT, NEW
YORK, SUSQUEHANNA AND WESTERN RAILROAD
COMPANY *ET AL.*, RESPONDENTS.

BROTHERHOOD OF RAILROAD TRAINMEN, *ET AL.*, APPEL-
LANTS, v. DWIGHT R. G. PALMER, COMMISSIONER,
NEW JERSEY STATE HIGHWAY DEPARTMENT, READ-
ING COMPANY, CENTRAL RAILROAD COMPANY OF
NEW JERSEY, *ET AL.*, RESPONDENTS.

Argued January 11, 1966—Decided June 29, 1966.

Mr. *James M. Davis, Jr.* argued the cause for appellants (*Messrs. Powell and Davis,* attorneys).

Mr. *Avrom J. Gold, Deputy Attorney General,* argued the cause for respondent New Jersey Highway Commissioner, (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney; *Mr. Gold* of counsel).

Mr. *Joseph A. Davis* argued the cause for respondents New York, Susquehanna and Western Railroad Company (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

Mr. *Blaine E. Capehart* argued the cause for respondents Reading Company and Central Railroad Company of New Jersey (*Messrs. Capehart & Scatchard,* attorneys).

PER CURIAM. This proceeding involves an attack on two decisions of the Commissioner of the State Highway Department on petitions by the respondent railroads for permission to discontinue certain passenger service then being rendered. One petition, a joint one, by the Reading Company and the Central Railroad Company of New Jersey sought leave to discontinue the operation of weekday trains 601 and 620, and Saturday trains 1600 and 1621 between Jersey City and West Trenton. The Central Railroad Company sought permission also to make certain other schedule changes if the principal petition was approved. The second petition by the New York, Susquehanna & Western Railroad sought permission to discontinue train 906 between Butler and Susquehanna Transfer, N. J., trains 910, 929 and 923 between Butler and North Hawthorne, N. J., and train 921 between Susquehanna Transfer and North Hawthorne, N. J.

Hearings were held by the Commissioner and evidence for and against the requested leave was introduced. At the conclusion thereof in the Reading and Central case the Commissioner observed that both carriers were in poor financial condition, that the precarious plight of the Central was well known and that the Reading cannot indefinitely survive a continuation of the deficits experienced in recent years. He found also a very limited passenger demand or need for the service provided by the trains in question, and that their continuance for the benefit of the small group (for most of whom there is reasonably convenient alternative service) would seriously endanger the existence of the other trains operated jointly by the carriers which serve several times as many New Jersey citizens. He concluded withdrawal of the trains involved would extend the life of more essential passenger service, and accordingly granted leave to discontinue permanently trains 601, 620, 1600 and 1621, and to make the necessary schedule adjustments.

In the Susquehanna case he found the railroad in a precarious financial condition, that it has been and is a deficit operation, and that the passenger service is provided at a

substantial loss. He found the passenger use meager, the public need very limited, paralleling bus service extensive, and the number of persons who would be inconvenienced by an order favorable to the railroad relatively few. There had been a continued decline in freight revenue which made it impossible for Susquehanna to absorb the passenger service loss, in spite of a previous cut-back in service and a sizeable increase in State contract payments. In his view, therefore, some immediate relief was imperative pending a further State study for over-all solutions. Accordingly he granted leave to discontinue train 906 between Butler and Susquehanna Transfer, trains 910, 929 and 923 between Butler and North Hawthorne, and train 921 between Susquehanna Transfer and Hawthorne, and to change the schedule of train 916 to provide an earlier arrival in New York.

On this appeal from the Commissioner's action a number of federal and state constitutional questions were raised, and it was urged also that he had no statutory authority to permit discontinuance of a regularly scheduled passenger train because such authority had been delegated to the Board of Public Utility Commissioners. In our judgment all of the issues but one have been disposed of adversely to appellants in *Sprissler v. Pennsylvania-Reading S. S. Lines*, 45 *N. J.* 127 (1965). Consequently there is no occasion to review them here.

One question calls for some discussion. Appellants challenge the constitutionality of *Section* 9 of *Chapter* 88, *L.* 1964, which requires a hearing by the Commissioner on a petition by a railroad for permission to decrease the number of trains or to change its schedule substantially. Notice thereof to adversely affected parties is required. The section says also:

"* * * Based on information and evidence adduced at such hearing *or* upon other information which has been made available as the result of any investigation or study and with consideration of the factors listed in section 3, the commissioner shall determine if the change in passenger service or fares petitioned by the carrier shall be made effective. * * *" *N. J. S. A.* 48:12A–16.9. (Emphasis ours)

Appellants contend this section on its face violates the due process clause of the Fourteenth Amendment of the United States Constitution. The claim is predicated upon the apparent alternative character of the basis on which the Commissioner is empowered to decide the issue presented to him at the hearing, *i. e.,* he may decide on the "information and evidence adduced at such hearing," *or* he may resolve the issue "upon other information which has been made available as the result of any investigation or study." Thus appellants urge the Legislature has authorized the Commissioner to decide their rights on matters *dehors* the record made at the hearing; on matters which are hearsay as to them and which they will have no opportunity to contest. In fact they suggest the Commissioner may rule against them on the basis of information which may not even be disclosed to them, thus emptying the statutory requirements for a hearing of all substantial value, and depriving them of due process.

 No record of the testimony taken at the hearings here was included in the appendix. As a result it cannot be said or argued that in this instance the Commissioner utilized off the record material in reaching his decision. And there is nothing in what appears to be his review of the evidence which indicates otherwise. In view of the presumption of validity of his ruling, and the failure of appellants to sustain their burden of demonstrating an improper basis for it, obviously the duty of an appellate tribunal would be to affirm.

 It is not necessary to decide the issue presented in due process terms. The Legislature specifically imposed the duty on the Commissioner to hold a hearing on notice when a railroad seeks relief such as that sought in this case. The statutory directive calls for the making of a record in the presence of the interested parties which they will have an opportunity to meet, and which will reveal to a reviewing court the factual basis upon which the determination rests. See *Garden State Farms, Inc. v. Hoffman,* 46 *N. J.* 595, 599–600 (1966). Our cases clearly establish the rule that at a hearing of the type required here, an administrator cannot

go outside the record made before him, and investigate or privately obtain evidence out of the presence of the interested parties and use it in whole or in part as the basis for his decision. The determination cannot rest upon undisclosed evidence which the parties have had no opportunity to test · for trustworthiness or to explain or rebut. *In re Plainfield-Union Water Co.*, 11 *N. J.* 382, 393 (1953); *Susquehanna, etc. Ass'n v. Bd. of Pub. Util. Comm'rs.*, 55 *N. J. Super.* 377, 408–409 (*App. Div.* 1959); *N. J. State Bd. of Optometrists v. Nemitz*, 21 *N. J. Super.* 18, 28–29 (*App. Div.* 1952). It does not follow from the statutory language employed here that the Legislature authorized any such unique hearing. It is a corollary of the rule referred to in the cases noted above that if an administrator or administrative tribunal obtains information or evidence outside the hearing which is considered of relevant probative value on the issue under consideration and which is to be used in formulating the ultimate decision, such information or evidence should be spread upon the record by orderly procedure and the parties given ample opportunity to test its trustworthiness in the normal manner, and to refute it if desired. *Abbotts Dairies v. Armstrong*, 14 *N. J.* 319, 332–333 (1954); *Penna. R. R. Co. v. N. J. State Aviation Com.*, 2 *N. J.* 64, 72 (1949); *National Dairy, etc. Co. v. Milk Control Board*, 133 *N. J. L.* 491, 498 (*Sup. Ct.* 1945); *Scaduto v. Town of Bloomfield*, 127 *N. J. L.* 1, 4 (*Sup. Ct.* 1941). The Legislature is presumed to know the construction placed by the courts on a statutory requirement for hearing such as is specified in the present enactment, and we find no intention to legislate contrary to that construction.

It is entirely reasonable to construe *section 9* to indicate a legislative intention to authorize the Commissioner to engage in a broad gauge hearing when a carrier seeks leave to curtail some existing passenger service or to increase fares —a hearing in the course of which, in his discretion, pertinent investigative or study material might be received and utilized. But in this connection we discern nothing expres-

sive of an intent to permit the *ex parte* use of such material by the Commissioner or to withhold it from the open record of the hearing or to fail or decline to make the interested parties aware of it and afford them an opportunity to show its lack of probative significance and to refute it. See *Abbotts Dairies v. Armstrong, supra.* We accept this as the proper interpretation of the section, and accordingly hold it to be valid.

For the reasons expressed the orders of the Commissioner are affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices FRANCIS, PROCTOR, HALL and SCHETTINO—5.

*For reversal*—None.