766 A.2d 831

TOSCO CORPORATION, PLAINTIFF–APPELLANT, v. NEW JERSEY DEPARTMENT OF TRANSPORTATION AND MARKETFAIR, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued January 24, 2001—Decided February 20, 2001.

200

Before Judges KING, COBURN and LANDAU.

*Richard L. Rudin,* argued the cause for appellant (*Weiner Lesniak,* attorneys; *Mr. Rudin,* of counsel and on the brief).

*Lorinda Lasus,* Deputy Attorney General, argued the cause for respondent New Jersey Department of Transportation (*John J. Farmer, Jr.,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Lasus,* on the brief).

*Mark A. Solomon,* argued the cause for respondent MarketFair (*Pepper Hamilton,* attorneys; *Mr. Solomon* relies on the brief of respondent New Jersey Department of Transportation.).

The opinion of the court was delivered by

COBURN, J.A.D.

This is an appeal from a determination of the New Jersey Department of Transportation ("DOT") concerning the design and alignment of a state highway. Mobil Oil Corporation ("Mobil") the original appellant, sold the adversely affected private property to appellant Tosco Corporation ("Tosco"), whose right to pursue Mobil's claims is conceded.

The DOT's decision was made in the context of a road-improvement project in West Windsor Township involving construction of a grade-separated interchange, commonly known as an overpass. A proposed ramp included an acceleration lane abutting the Mobil property, a gas station and convenience store, that would eliminate its existing access to the highway and render the property unusable. Tosco wants to continue the business previously operated by Mobil.

Mobil had proposed to the DOT alternative plans that would have permitted continued operation of its business while increasing the adverse impact of the project on a shopping center operated by respondent MarketFair. Mobil's plans included shifting the ramp and acceleration lane in MarketFair's direction, thereby requiring a taking of additional land used by the shopping

center for parking. MarketFair opposed the change and was supported in that regard by the administration of West Windsor Township.

Tosco's primary claim is that there was a denial of procedural due process because the DOT made its decision on the basis of undisclosed evidence and arguments offered by or in support of MarketFair. Tosco also contends that there was a denial of procedural due process with respect to what it claims was a request for a waiver of the denial of a highway access permit. Finally, Tosco contends that the DOT's decision was "arbitrary and unreasonable because (A) it is not based on adequate findings; (B) it impermissibly delegates decision-making authority to the mayor of the township; (C) it is inconsistent with DOT's subsequent actions; and (D) it is ambiguous."

I

In the spring of 1997, the DOT proposed construction of an overpass at the intersection of Route 1 and Meadow Road in West Windsor Township. On November 3, the West Windsor Council signed a "Partnering Agreement" with the DOT for this project. (The DOT formally signed the agreement in January 1998.) The agreement gives West Windsor the initial responsibility for selecting a design consultant who would prepare right-of-way and construction plans. The DOT is responsible for design-review, right-of-way acquisition, and construction. If more than one alternative is proposed, the DOT has the right to final design approval.

On November 13, 1997, the DOT made a presentation to the public of its plan for the overpass. That detailed plan included a ramp from Meadow Road to Route 1 southbound with an acceleration lane that ended south of the gas station/convenience store owned by Mobil. Since access to a state highway is prohibited along the full width of acceleration lanes by *N.J.A.C.* 16:47–3.5(e)6 and DOT's Design Manual—Roadway, Section 7–11, the effect of

the proposed plan would be to render Mobil's property, which is currently served by two driveways leading onto Route 1, unusable.

Mobil reacted by proposing to the DOT over a number months alternative designs that would shift the acceleration lane and ramp to the north so that the lane would end before reaching Mobil's southerly property line, thereby allowing Mobil to retain one driveway onto Route 1. That design required the DOT to take an additional .65 acres from MarketFair's parking area. That taking would reduce the shopping center from about 38.5 acres to about 37.8 acres.

On April 15, 1998, the DOT wrote to the mayor of West Windsor Township. The letter indicated that after a review "of the many alternatives submitted on behalf of the Mobil Oil Corporation ... we are pleased to report that the design alternative is being modified to provide *the best access possible* along Route 1 south-bound." (Emphasis added.) This plan would have permitted the continued operation of the Mobil station with access to the high-way. The letter asked that the township adopt a formal resolution of support. The DOT's "Monthly Design Progress Report" of the same date recited that the shift of the acceleration lane would "save the Mobil station but require additional, albeit less costly, takings at ... MarketFair." The DOT contends that it did not perform a detailed analysis of the impact on MarketFair and that it accepted Mobil's representations with respect to the relative costs involved in allowing Mobil's business to continue while taking more of MarketFair's land. Those assertions are denied but without reference to anything to the contrary in the record.

On May 11, the mayor wrote to the DOT raising questions about the new design and asking that efforts be made to find a solution satisfactory to MarketFair. On May 14, MarketFair's attorneys met with the DOT to review and discuss the proposed plan. On May 20, the attorneys for MarketFair wrote to the DOT objecting to the change of plan on the ground that any increased loss of space would impose "a significant burden on MarketFair and its tenants." The letter went on as follows:

Specifically, loss of spaces directly impacts MarketFair's obligations under its lease with one of its major anchor tenants, Barnes & Noble, and will prevent MarketFair from realizing the expansion plans which it has been developing over the last year. The out-parcel in front of MarketFair which you propose for possible replacement of spaces is an integral part of those expansion plans. MarketFair has been preparing a site plan for parking for that parcel and it absolutely cannot have that area serve as replacement parking for the spaces NJDOT proposes to eliminate.

On May 21, the mayor again wrote to the DOT, this time expressing full support for MarketFair's position.

On May 27, the DOT decided to construct the overpass in accordance with its initial plan.

Aware of the objections to its plan, and the DOT's decision to build in accordance with the first design, Mobil had its traffic consultant submit four alternative plans to the DOT designed to mitigate the loss of parking. However, those plans all provided for the elimination of the perimeter loop road in MarketFair's parking lot, which Mobil's traffic consultants believed to be superfluous. Mobil claimed that its redesign would save the DOT considerable property acquisition costs. The DOT agreed to have Mobil's plans evaluated by the design consultant.

On August 27, West Windsor's township engineer wrote to the DOT expressing strong objection to Mobil's plan to eliminate the perimeter loop road. He said:

It has been the long-standing practice of the West Windsor Township Planning Board to encourage, and even mandate, the use of perimeter loop roads in large parking lots as a means of controlling access, increasing safety, providing better emergency access and permitting a more extensive landscaped environment.... The loop road system is so important to the Planning Board that it is mentioned twice in the Resolution of Memorialization for the MarketFair project.

On September 15, the design consultant, T & M Associates, submitted its report to the DOT, copies of which were made available to Mobil and MarketFair.

On October 6, the DOT wrote to MarketFair advising that it was currently considering the four alternative designs submitted by Mobil. The letter included these statements:

Keep in mind, the ultimate selection of a final design alternative must be based on the project's needs, the proposed engineering solutions, and the costs to implement

each solution. While each alternative meets current design standards and satisfies the project's needs, the Department must now evaluate the costs associated with each, including the initially preferred alternative which denied direct Route 1 access to the Mobil station. Cost will be the final determination.

The letter also requested a copy of the lease with Barnes & Noble which MarketFair had previously claimed would cause a loss of this tenant if the project was constructed along the lines suggested by Mobil. The letter also noted that since Mobil had been providing "a wealth of information on their behalf, we wanted to provide MarketFair with that same opportunity."

MarketFair responded by submitting the following documents in support of its position: (1) letters dated October 22 and December 10 from its attorney; (2) a letter dated October 22 from its Civil/Traffic Engineer, TRC Raymond Keyes Associates; (3) a letter dated October 28 from its professional land planner, Lenaz, Mueller & Associates. All of those documents contain arguments attacking Mobil's plans and supporting the DOT's original plan. None of those documents were made available to Mobil during the administrative proceedings.

On November 2, Mobil submitted its experts' responses to T & M's September 15 report and requested a hearing. The DOT replied by letter on November 4, which included this statement:

Once the Department has completed its review of the proposed alternatives, Mobil will be notified of the Department's decision and documents supporting that decision will be provided.

A number of reports were prepared by the DOT respecting the costs of the various plans, and a further letter was received from the mayor indicating opposition to removal of the perimeter loop, also called a "double circulation aisle."

On March 8, 1999, the DOT issued a letter reflecting its decision to construct in accordance with its original plan. In part, the letter stated

Restoration of the double circulation aisle, which the Township has stated it would require, renders all of Mobil's alternatives more costly. Therefore, the Department rejects the alternatives submitted on behalf of Mobil. Final design will proceed in accordance with the preferred alternative presented to the Township Council and the public in November of 1997.

On March 23, Mobil asked the DOT if the March 8 letter was a final decision. The DOT responded that it would not consider any further proposals from Mobil. Nonetheless, in April, Mobil asked for permission to submit a new plan, which included a request that the DOT issue a waiver under the Access Code of the "no access" line along Route 1 southbound so as to allow Mobil to retain one of its driveways. Following studies of the plan and further discussions with Mobil, the DOT rejected the proposal. In a letter dated April 23, the DOT formally advised Mobil that the March 8 letter was a final decision. After Mobil filed its Notice of Appeal, then Assistant Commissioner Tong filed an Amplification of Reasons dated June 22, 1999, in support of his oral denial of Mobil's request for approval of its last plan.

## II

▪ The alignment of state highways is committed to the discretion of the DOT. *N.J.S.A.* 27:1A–1 *et seq.; Township of Hopewell v. Goldberg,* 101 *N.J.Super.* 589, 597, 245 *A.*2d 67 (App.Div.), *certif. denied,* 52 *N.J.* 500, 246 *A.*2d 457 (1968). Generally, we may not substitute our judgment for that of the DOT so long as "there is substantial credible evidence present in the record to support the proposed route alignment." *Ibid.*

▪ Tosco's first two points concern its claim that Mobil was denied procedural due process. Although Mobil never specifically asked for a "trial-type" hearing, Tosco contends that we should remand for such a hearing. In the alternative, Tosco argues that we should remand for an informal hearing in which it would be permitted to meet the arguments submitted to the DOT by and on behalf of MarketFair. The DOT responds by arguing that no case supports the proposition "that DOT must hold any type of hearing when analyzing the cost and design of a proposed highway project." Describing its practices in this regard, it states the following:

> When DOT proceeds with a design based on a preferred alignment that it has selected and an affected property owner requests that DOT consider an alternate

design, DOT does not hold a hearing. It reviews the alternate proposal and, based on its knowledge and expertise in highway design, right of way acquisition and construction, it decides whether or not to adopt the alternate proposal. Thus, Mobil has been treated in the same way as other property owners who submit alternate proposals on other projects.

In this case, instead of merely reviewing Mobil's plan, the DOT in fact held many informal hearings, and it did not limit its review to assessing the alternative proposal in the context of its own expertise. Instead, it permitted and invited comment from others including the mayor and representatives of MarketFair, and it concedes that some of the material it received was not shown to Mobil prior to decision.

■ Tosco relies primarily on *High Horizons Dev. v. Dept. of Transp.*, 120 *N.J.* 40, 575 *A.*2d 1360 (1990). That case involved a property owner's application for access to a state highway. The Court held that the property owner was not entitled to a trial-type hearing but he was "certainly entitled to procedural fairness in pursuing discretionary access." *Id.* at 49, 575 *A.*2d 1360. By way of further explanation, the Court said:

If the DOT is exercising "policy or discretion" with respect to access, a clear requirement for a trial-type hearing is not present. On the other hand, if the question turns on expert opinion relied on by the agency, one must be able in some way to contest the bases of the opinion. Professor Davis, discussing the requirements for a evidentiary hearing, states: "Due process never requires a trial on non-factual issues. What is needed on such issues is argument, written or oral, not evidence and not trial procedure...."

[*Id.* at 51, 575 *A.*2d 1360 (citation omitted).]

■ The Court added,

There is no question that the property owner should have full opportunity to be heard by the agency, that is, to submit comment with respect to the agency's decision, and to meet any conclusions that may be unfavorable to the property owner.

[*Id.* at 52, 575 *A.*2d 1360.]

■ Finally the Court commented on the impropriety of the DOT's reliance on undisclosed evidence:

Because the procedural requirements of due process necessarily vary from case to case, *Lopez v. New Jersey Bell Tel. Co.*, 51 *N.J.* 362, 373, 240 *A.*2d 670 (1968), the question arises whether in this case the requirements of due process mandate further, more formal agency action. On that score, there is one aspect of this case

that is extremely troubling, namely, the agency's reliance on undisclosed evidence, which could not be contested by the property owner. Certainly, included among the elements of procedural fairness is a chance to know the opposing evidence and argument and to present evidence and argument in response. 2 K. Davis, *supra*, § 10:6, at 327, *cited in Board of Educ. v. Cooperman, supra*, 105 *N.J.* [587] at 600, 523 *A.*2d 655.

One of the core values of judicial review of administrative action is the furtherance of accountability. Thus, an agency is never free to act on undisclosed evidence that parties have had no opportunity to rebut. *Brotherhood of R.R. Trainmen v. Palmer*, 47 *N.J.* 482, 487, 221 *A.*2d 721 (1966). In this case, it appears that the agency did consider recommendations that were not disclosed to the property owner, and the property owner was not entitled to comment thereon. We agree with the Appellate Division that here "DOT violated the requirements of administrative due process by failing to disclose all of the documents upon which it relied in denying appellant's application." 231 *N.J.Super.* at 407, 555 *A.*2d 740. Hence, in the circumstances of this case, we agree with the Appellate Division that a remand is required to accord administrative due process. The case, however, does not meet the definition of a "contested case" under the APA and need not, although it may, be referred by the agency to the OAL. At a minimum DOT must accord the property owner a new hearing at which it may meet and contest all evidence relied on by the agency. The agency must tailor the procedure to ensure due process and may allow cross-examination of its experts to satisfy that requirement. *See Board of Educ. v. Cooperman, supra*, 105 *N.J.* at 601, 523 *A.*2d 655 (agency should exercise power to allow cross-examination in the interests of justice).

[*Id.* at 53–54, 575 *A.*2d 1360.]

The DOT argues that *High Horizons* is inapplicable because this case does not involve the denial of a permit for highway access but the alignment of a highway. It argues further, "If DOT were required to hold hearings on every highway design decision on which a property owner wanted to be heard, highway projects would be delayed for years."

There is considerable merit to the DOT's position if its argument were to be understood as limited to trial-type hearings in this context. But it seems to be arguing, as well, that Mobil was not entitled to any hearing. The question, then, appears to be this: when a property owner is not entitled to an informal hearing before the DOT but is nonetheless granted that privilege, may the DOT render its decision while relying in part on adverse information received from others and withheld from the property owner?

In *High Horizons,* the Court said that "an agency is never free to act on undisclosed evidence that parties have had no opportunity to rebut." *Id.* at 53, 575 *A.*2d 1360. Since the DOT followed that prohibited course in this case, a remand to the agency is necessary so that in an informal setting or by written submission, Tosco may submit material to rebut the previously undisclosed information on which the agency relied.

■ We reject Tosco's argument in relation to the last plan Mobil submitted, the plan that it argues would have required a waiver of the denial of highway access. In rejecting that plan, the assistant commissioner noted that he was not taking into account any effect of the plan on MarketFair. Rather, he explained in his extensive letter of June 22, 1999, the plan was being rejected because "it did not meet accepted highway design standards."

In light of the remand ordered, we need not consider Tosco's remaining arguments which attack the decisions made by the DOT with respect to the first four Mobil plans, the decisions that must be reconsidered by the DOT after Tosco has had an opportunity to rebut the previously undisclosed evidence.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.