852 A.2d 277 (2004)
371 N.J. Super. 199
In re AMICO/TUNNEL CARWASH.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 2004.
Decided July 15, 2004.
*279 Roger S. Clapp, Summit, argued the cause for appellants John and Virginia Heldon (Cooper, Rose & English, attorneys; Michael S. Rubin and Mr. Clapp, on the brief).
Penny S. Ludman, Deputy Attorney General, argued the cause for respondent New Jersey Meadowlands Commission (Peter C. Harvey, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Ms. Ludman, on the brief).
Gary S. Rosensweig, Princeton, argued the cause for respondent Paul Amico (Archer & Greiner, attorneys).
Before Judges SKILLMAN, COBURN and C.S. FISHER.
*278 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal requires us to interpret the 1993 amendment to the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -25, which prohibits a state administrative agency from adopting "any rule or regulation that would allow a third party to appeal a permit decision." N.J.S.A. 52:14B-3.3(a). We conclude that this amendment withdrew the power of an administrative agency to adopt a rule or regulation that authorizes a hearing before the Office of Administrative Law (OAL) even though a hearing is not required by the APA. Consequently, to be entitled to an OAL hearing, a person other than an applicant for a permit must have a "particularized property interest sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.2(c). We also conclude that the owner of property adjacent to a property that is the subject of a variance application to the New *280 Jersey Meadowlands Commission (NJMC) does not have such a "particularized property interest" and therefore is not entitled to an OAL hearing. In addition, this appeal requires us to decide whether the NJMC may delegate the power to issue a variance to its Executive Director. We conclude that only the NJMC may exercise the quasi-judicial power to issue a variance.
On October 19, 2001, respondent Paul Amico applied to the NJMC for three bulk variances that are required to construct a proposed car wash on his property located on the Route 3 service road in Secaucus. Amico applied for variances from N.J.A.C. 19:4-8.7(a)(1), which requires a fifty-foot strip of wetland for any development that borders the Hackensack River or any of its tributaries, to allow a twenty-three foot wide strip of wetland adjacent to Mill Creek; N.J.A.C. 19:4-8.2(b)(3), which prohibits driveway entrances and exits within fifty feet of an intersection, to allow a forty-one foot separation from the intersection of Roosevelt Avenue and the service road to the edge of his proposed driveway; and N.J.A.C. 19:4-8.14(h)(4), which restricts the maximum sign area on a property to five percent of the building's front facade, which in this case would be ninety-five square feet, to allow a double-sided pole sign that contains 112 square feet of sign area and a seventy-two square foot wall sign.[1]
On April 16, 2002, the NJMC's Chief Engineer conducted a hearing on Amico's variance application. Appellants, John and Virginia Heldon, who own an adjacent property, participated in the hearing. John Heldon testified in opposition to the application, and their counsel was allowed to cross-examine Amico's witnesses. Appellants indicated that they had attempted to retain experts to appear at the hearing, but had been unsuccessful. Consequently, appellants requested additional time to submit expert reports. After the hearing, the Chief Engineer accepted two expert reports submitted by appellants, which concluded that Amico's development plan would create unsafe traffic conditions and have an adverse impact on the surrounding neighborhood. Amico subsequently submitted three expert reports that responded to appellants' reports.
On August 23, 2002, the NJMC's Executive Director transmitted a thirty-seven page written decision to Amico, appellants and other interested parties which approved Amico's variance application. The approval of the variance from the requirement of a fifty-foot distance between the intersection of Roosevelt Avenue and the Route 3 service road and the driveway exiting Amico's proposed car wash was conditioned upon Amico obtaining the Department of Transportation's approval.
The decision approving the variances was signed by the Chief Engineer with the notation, "Recommendation on Variance Requests," and by the NJMC's Executive Director with the notation, "Decision on Variance Request." The letter transmitting the decision stated:
Any person who claims to be aggrieved by this decision may request an appeal pursuant to N.J.A.C. 19:4-6.25(b)....Upon grant of the request for an appeal, the Executive Director or his designee shall transmit the matter to the [OAL] for a hearing.
On August 30, 2002, appellants sent a letter to the NJMC which appealed the Executive Director's August 23, 2002 decision *281 approving Amico's variance application. On September 13, 2002, the NJMC transmitted the appeal to the OAL as a contested case. However, the Attorney General's office subsequently advised the NJMC that the matter had been improperly transmitted to the OAL, because the 1993 amendment to the APA prohibits a state administrative agency from adopting a rule or regulation that allows a third party to appeal a permit decision, unless the party has a statutory or constitutional right to appeal, N.J.S.A. 52:14B-3.3, and appellant does not have such a right.
On March 28, 2003, the NJMC adopted a resolution which concluded that appellants do not have a statutory or constitutional right to appeal the approval of Amico's variance applications to the OAL and requested the OAL to return the case. Although this resolution does not indicate that the NJMC reviewed and approved the Executive Director's August 23, 2003 decision, the NJMC's staff treated the withdrawal of the previous transmittal of the Executive Director's decision to the OAL as having the effect of making the Executive Director's decision the NJMC's final decision. Consistent with this view, the NJMC staff issued a conditional zoning permit to Amico.
Appellants filed a notice of appeal from the NJMC's March 28, 2003 resolution. Appellants' motions to stay that resolution were denied by the NJMC and then by this court. We now affirm the March 28th resolution but reverse the decision of the NJMC's staff to treat this resolution as a final decision of the NJMC which granted the bulk variances required for Amico to construct a car wash on his property.

I
The APA provides that "[i]n a contested case, all parties shall be afforded an opportunity for a hearing after reasonable notice." N.J.S.A. 52:14B-9(a). A contested case hearing is required to be conducted by an Administrative Law Judge (ALJ) unless the agency head conducts the hearing personally. N.J.S.A. 52:14B-10(c); N.J.S.A. 52:14F-8(b); see Div. of State Police v. Maguire, 368 N.J.Super. 564, 847 A.2d 614 (App.Div.2004).
The APA defines "contested case" to mean:
[A] proceeding ... in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing....
[N.J.S.A. 52:14B-2(b).]
Although this definition expressly grants the right to an OAL hearing only if a hearing is required "by constitutional right or by statute[,]" our courts construed the APA to also require an OAL hearing if an adjudicatory hearing was required by an administrative rule or regulation. In In re Orange Sav. Bank, 172 N.J.Super. 275, 411 A.2d 1150 (App.Div.), appeal dismissed, 84 N.J. 433, 420 A.2d 339 (1980), we held that where a regulation adopted by the Commissioner of Banking granted a right to a hearing to a bank that objected to a competitor's branch bank application, this constituted a "contested case" that had to be transferred to the OAL. In reaching this conclusion, we stated that "[o]nce ... the Commissioner determines that a hearing on a full branch office application is `advisable,'... the trial-type procedure which he has, by regulations, prescribed, culminating in his final determination on the application is, in the main, substantially the same as that which applies to a `contested *282 case' under the [APA]." Id. at 283, 411 A.2d 1150 (citations omitted). This holding was seemingly approved by the Supreme Court, which stated in dictum, citing Orange Sav. Bank, that "[a]djudicatory hearings may be granted at the discretion of the agency" even if not required by the Constitution or a statute, and that "once [the agency head] determines [a] hearing is advisable, [the] agency must conform to APA procedures for contested cases." Texter v. Dept. of Human Servs., 88 N.J. 376, 384-85, 443 A.2d 178 (1982); see also High Horizons Dev. Co. v. State Dept. of Transp., 120 N.J. 40, 54, 575 A.2d 1360 (1990) (noting that agency could refer a case to OAL for a hearing by rule or regulation even though it did not meet APA definition of "contested case").
In 1993, the Legislature amended the APA to withdraw a state administrative agency's authority to confer a right to an OAL hearing even though there is no statutory or constitutional right to a hearing. L. 1993, c. 359. This amendment added a new section to the APA, which states in pertinent part that "a State agency shall not promulgate any rule or regulation that would allow a third party to appeal a permit decision." N.J.S.A. 52:14B-3.3(a). Although this new section prohibits adoption of any rule or regulation that allows a third party "to appeal" a permit decision, the Legislature's intent was not to interfere with the constitutionally protected right to appeal an agency decision to this court, N.J. Const. art VI, § 5, par. 4; see In re Senior Appeals Exam'rs, 60 N.J. 356, 363, 290 A.2d 129 (1972), but rather to prohibit any administrative rule or regulation that authorizes a party to obtain a contested case hearing before the OAL. This intent is clearly evidenced by the fact that the 1993 amendment was enacted as a supplement to the APA, which governs contested case hearings before the OAL. See Maguire, supra, 368 N.J.Super. at 572-73, 847 A.2d 614. Moreover, the definition of a "third party," who under the amendment is precluded from "appeal[ing]" a permit decision, excludes "[any] person who has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.2(c).
Before enactment of the 1993 amendment to the APA, the NJMC adopted regulations that conferred a right to an OAL hearing upon any owner of property located within 200 feet of a property for which a variance was sought. See N.J.A.C. 19:4-6.22(b)(1); N.J.A.C. 19:4-6.22(d)(1); N.J.A.C. 19:4-6.25. In conformity with these regulations, the NJMC transmitted appellants' appeal of the Executive Director's approval of Amico's variance application to the OAL. However, the Attorney General's office subsequently advised the NJMC that the regulations that purported to give appellants a right to a hearing before the OAL violate N.J.S.A. 52:14B-3.3. Acting in accordance with this advice, the NJMC adopted the March 28, 2003 resolution which concluded that appellants have no right to an OAL hearing.[2] Thus, the threshold issue in this appeal is whether the NJMC correctly concluded that the right to an OAL hearing that the NJMC regulations formerly conferred upon appellants was abolished by the 1993 amendment to the APA.
*283 There is no reported opinion interpreting this amendment or any illuminating legislative history. Nevertheless, the evident intent of the 1993 amendment was to withdraw the authority of state agencies to confer a right to an OAL hearing by rule or regulation.
The operative section of this amendment is N.J.S.A. 52:14B-3.3, which provides:
a. Except as otherwise required by federal law or by a statute that specifically allows a third party to appeal a permit decision, a State agency shall not promulgate any rule or regulation that would allow a third party to appeal a permit decision.

b. Nothing herein shall be construed as abrogating or otherwise limiting any person's constitutional and statutory rights to appeal a permit decision.
(Emphasis added.)
The amendment defines "state agency" or "agency" to mean
[E]ach of the principal departments in the executive branch of the State government, and all boards, divisions, commissions, agencies, councils, authorities, offices or officers within any such departments which are authorized to grant, deny, modify, suspend, or revoke a license, permit, certificate, approval, chapter, registration or other form of permission required by law, ...
[N.J.S.A. 52:14B-3.2.]
Appellants do not dispute that the NJMC is a state agency under this definition.
The pertinent part of the definition of a "third party," who cannot be authorized to appeal a permit decision by rule or regulation, states:
[A]ny person other than:
c. A person who has particularized property interest sufficient to require a hearing on constitutional or statutory grounds.
[Ibid.]
The 1993 amendment defines a "permit decision" to mean:
[A] decision by a State agency to grant, deny, modify, suspend or revoke any agency license, permit, certificate, approval, chapter, registration or other form of permission required by law, other than a license or certificate issued to an individual for the practice of a profession or occupation.
[Ibid.]
Under this expansive definition, the grant of a variance by the NJMC constitutes "a decision by a State agency to grant ... [an] agency ... approval ... or other form of permission required by law." Consequently, the NJMC correctly concluded that its former regulations were invalid insofar as they purported to confer a right to an OAL hearing upon a "third party," as defined in N.J.S.A. 52:14B-3.2. Indeed, the evident purpose of the 1993 amendment was to withdraw the power of a state administrative agency to provide for an OAL hearing by rule or regulation even though such a hearing is not required by the APA.
Because N.J.S.A. 52:14B-3.3 now bars a state agency from "promulgat[ing] any rule or regulation that would allow a third party to appeal a permit decision[,]" appellants are entitled to an OAL hearing only if they can show that they are not a "third party" within the intent of the 1993 amendment. Thus, appellants must establish that they have a "particularized property interest [in Amico's variance application] sufficient to require a hearing on constitutional or statutory grounds." N.J.S.A. 52:14B-3.2.
Appellants clearly do not have a statutory right to a hearing because the Hackensack Meadowlands Reclamation *284 and Development Act (the Act), N.J.S.A. 13:17-1 to -94, which governs the NJMC, does not grant a right to a hearing to an objector to a variance application. N.J.S.A. 13:17-13 provides that "[t]he [NJMC] shall review and regulate subdivision and land development within the district, in accordance with procedures ... adopted by resolution[.]" See also N.J.S.A. 13:17-18. Unlike the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -136, which sets forth detailed procedures to govern the hearing of land use applications by planning boards and boards of adjustments, see, e.g., N.J.S.A. 40:55D-9 to -12, the Act does not contain procedures to govern the NJMC's review of land use development applications. Instead, the Legislature authorized the NJMC to adopt its own procedures for reviewing such applications. N.J.S.A. 13:17-6(r); N.J.S.A. 13:17-13 to -14.1. Although the procedural rules the NJMC adopted to govern its review of land use applications conferred hearing rights upon parties such as appellants, those hearing rights did not satisfy N.J.S.A. 52:14B-3.3, because they were conferred by "agency rule or regulation" rather than by "statute."
The more substantial question is whether appellants have a "particularized property interest sufficient to require a hearing on constitutional ... grounds." N.J.S.A. 52:14B-3.2. In Spalt v. New Jersey Dep't of Envtl. Prot., 237 N.J.Super. 206, 212, 567 A.2d 264 (App.Div.1989), certif. denied, 122 N.J. 140, 584 A.2d 213 (1990), we concluded that the owners of property located close to a proposed residential development did not have a particularized property interest that gave them a constitutional right to a hearing to oppose an application for a Coastal Area Facility Review Act permit. In reaching this conclusion, we stated that "simply because some of the plaintiffs reside close to the ... site and are fearful of resultant injury to their property, does not mean that they are entitled to an adjudicatory hearing. Fear of damage to one's ... generalized property rights shared with other property owners is insufficient to demonstrate a particularized property right ...." Ibid. (citations omitted); see also High Horizons, supra, 120 N.J. at 49-52, 575 A.2d 1360; Normandy Beach Improvement Ass'n v. Comm'r, Dept. of Envtl. Prot., 193 N.J.Super. 57, 61-62, 472 A.2d 156 (App.Div.1983), cert. denied, 96 N.J. 305, 475 A.2d 596 (1984); 37 New Jersey Practice, Administrative Law & Practice, § 4.7 (Steven L. Lefelt, et al.) (2000).
We reach the same conclusion in this case. Although appellants assert that the construction of a car wash on Amico's property would increase traffic congestion in front of their property, this anticipated impact from Amico's proposed development is similar to the impacts commonly experienced by owners of property in the vicinity of any proposed new development. It is also similar to the impact that we found insufficient to confer a constitutional right to a hearing in Spalt. Consequently, appellants' ownership of property adjoining Amico's property does not give them a particularized property interest in his development plan that entitles them to a hearing on constitutional grounds.
For these reasons, we conclude that appellants are "third part[ies]" within the intent of the 1993 amendment to the APA, and therefore are not entitled to an OAL hearing on Amico's variance application.

II
Although appellants do not have a right to an OAL hearing, this does not mean that Amico now has the variances required to proceed with construction of *285 the proposed car wash. The August 23, 2002 written decision that granted Amico's variance application was recommended by NJMC's Chief Engineer and approved by its Executive Director. However, the NJMC itself did not approve this staff decision either before its transmittal to the parties or after the OAL returned the case to the agency. Consequently, Amico now has the required variances only if the NJMC validly delegated the authority to issue a variance to its Executive Director.
The Act provides that the NJMC shall consist of the Commissioner of Community Affairs and six citizen-members appointed by the Governor with the advice and consent of the Senate. N.J.S.A. 13:17-5(b)(1),(2). The Act vests "[t]he powers of the [NJMC] ... in [its] members[,]" and "the affirmative vote of a majority of the members" is required to take any action. N.J.S.A. 13:17-5(h). The Act also authorizes the NJMC to "designate one or more of its agents or employees to exercise such administrative functions, powers and duties as it may deem proper, under its supervision and control." Ibid. Thus, the question is whether the authority to issue a variance is an "administrative function, power or duty" that the NJMC may delegate to its Executive Director.
The determination whether to grant a variance is not simply a ministerial act but rather a quasi-judicial determination that requires an agency empowered to grant such relief to evaluate the factual materials presented in support of the application in light of controlling legal standards. See Township of Stafford v. Stafford Township Zoning Bd. of Adjustment, 154 N.J. 62, 73, 711 A.2d 282 (1998); Ferraro v. Zoning Bd. of Adjustment of Holmdel, 119 N.J. 61, 69-71, 574 A.2d 38 (1990). A variance application "arise[s] in a highly elaborate, quasi-judicial procedural framework that is not typical of ordinary administrative licensure," id. at 69, 574 A.2d 38, "and the decision-making process must be sensitive and informed." Id. at 71, 574 A.2d 38.
In Ferraro, the Court held that the MLUL does not authorize a municipality to enter into an inter-municipal agreement which delegates its authority to grant a variance to another municipality. Id. at 68-74, 574 A.2d 38. Noting that "[t]he delegation of the zoning power [had] been meticulously addressed" in the MLUL, id. at 70, 574 A.2d 38, the Court concluded that a legislative intent to allow delegation of this authority should not be found merely "by implication." Id. at 72, 574 A.2d 38.
Similarly, in In re Madin/Lordland Dev. Int'l, 201 N.J.Super. 105, 132-37, 492 A.2d 1034 (App.Div.), certif. vacated on grounds of mootness, 103 N.J. 689, 512 A.2d 490 (1986), we concluded that the Pinelands Commission, an agency with regional land-use planning power comparable to the NJMC, could not delegate the power to issue a variance to its staff. We noted that "when the Commission reviews or is required to review a development application, or even when its staff does preliminary investigation, it is ultimately the Commission which must determine whether the proposed development complies with the minimum standards of the [Pinelands management plan]." Id. at 134, 492 A.2d 1034. We also noted that "[t]he Commission's functions in considering development applications are ... generally akin to land use regulation and, specifically, to the exercise of the variance power[,]" and that "[s]uch functions are peculiarly quasi-judicial in nature." Ibid. Consequently, we held that "[t]o the extent that the [Pinelands Commission's] regulations authorize the action of the staff [on an application for a development approval] to be the final action of the Commission, they *286 are inconsistent with the statute and ineffective." Id. at 137, 492 A.2d 1034.
We conclude that the Hackensack Meadowland Reclamation and Development Act, like the Pinelands Protection Act, N.J.S.A. 13:18A-1 to -58, interpreted in In re Madin, does not confer authority upon the NJMC to delegate the power to grant a variance to its staff. When the legislation creating the NJMC was introduced, one of the most controversial issues was the proposal to transfer the municipal power over zoning and development approvals to a new regional planning agency. See MeadowsTitle Bill Scored, Newark Evening News, June 6, 1968; Bill is Stalled, Newark Evening News, June 9, 1968 (re-printed in Legislative History of N.J.R.S. 13:17-1 et seq. (Meadowlands) (N.J. State Library, Feb. 11, 1969)). In an effort to address the constituent municipalities' concern that such legislation would deprive them of any control over land uses within the District, the Act provides that four of the NJMC's seven members must be residents of the constituent municipalities. N.J.S.A. 13:17-5(b)(2). Moreover, despite the inclusion of this provision, the Act's constitutionality was challenged by the constituent municipalities on various grounds, including a claim that the Act improperly delegated the municipal power to control land use to the NJMC. See Meadowlands Reg. Dev. Agency v. State, 112 N.J.Super. 89, 122-24, 270 A.2d 418 (Ch.Div.1970), aff'd 63 N.J. 35, 304 A.2d 545, appeal dismissed, 414 U.S. 991, 94 S.Ct. 343, 38 L.Ed.2d 230 (1973). In view of the controversy that surrounded the proposed transfer of the power to control land use from the constituent municipalities to the NJMC, it is highly unlikely the Legislature intended its authorization to the NJMC to assign "administrative functions, powers and duties" to NJMC staff to include a delegation of its authority to grant a variance. Rather, the Legislature undoubtedly contemplated that this sensitive power would be exercised only by the members of the NJMC. Therefore, we conclude that although the NJMC may assign its staff responsibility to assemble information relevant to a variance application, and to conduct any hearing that may be appropriate and make recommendations based on the record at such a hearing, the final decision whether to grant or deny a variance application must be made by the members of the NJMC themselves.
In this case, the NJMC never voted upon Amico's variance application. Consequently, the matter must be remanded to the NJMC to determine whether Amico should be granted the variances required for his proposed car wash. In making this determination, the NJMC may consider the transcripts of the hearing conducted by its Chief Engineer, the exhibits introduced at that hearing and the August 22, 2002 decision recommended by the Chief Engineer and approved by the Executive Director. Appellants should be afforded an opportunity to review and comment upon any evidence or recommendations the NJMC may consider. See High Horizons, supra, 120 N.J. at 53-54, 575 A.2d 1360; Bhd. of R.R. Trainmen v. Palmer, 47 N.J. 482, 486-88, 221 A.2d 721 (1966); Tosco Corp. v. New Jersey Dept. of Transp., 337 N.J.Super. 199, 207-09, 766 A.2d 831 (App.Div.2001).
Accordingly, we affirm the March 28, 2003 resolution of the NJMC which concluded that appellants have no right to an OAL hearing on Amico's variance application. We reverse the subsequent action of the NJMC staff which treated this resolution as a final decision approving Amico's variance application and remand the matter to the NJMC for further proceedings in conformity with this opinion.
NOTES
[1] These regulations were renumbered and revised during the pendency of the appeal. The citations are to the present regulations.
[2] During the pendency of this appeal, the NJMC amended the regulations pursuant to which this matter had been transmitted to the OAL to conform to the Attorney General's advice. A new regulation states: "[N]othing in this section shall be construed to provide a right to an administrative hearing in contravention of N.J.S.A. 52:14B-3.1 through 3.3 of the [APA]." N.J.A.C. 19:4-4.19(g); 35 N.J.R. 4525.