**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1391-18T3

IN THE MATTER OF A USE
VARIANCE APPLICATION
SUBMITTED AS PART OF FILE
NO. 17-239 MEPT LINCOLN
CROSSING LLC/LINCOLN
GATEWAY – NEW BLDG/
VARIANCE BLOCK 451.01,
LOT 14.011, IN THE TOWNSHIP
OF NORTH BERGEN AND
BLOCK 155, LOTS 1.03, 1.04 AND
6, IN THE TOWN OF SECAUCUS.

_____

Argued November 21, 2019 – Decided August 4, 2020

Before Judges Suter and DeAlmeida.

On appeal from the New Jersey Sports and Exposition
Authority.

Joseph B. Fiorenzo argued the cause for appellant
Towers Associates, Ltd. (Sills Cummis & Gross, PC,
attorneys; Joseph B. Fiorenzo, of counsel and on the
briefs).

Eric D. Mc Cullough argued the cause for respondent
MEPT Lincoln Crossing, LLC (Waters Mc Pherson, Mc
Neill, PC, attorneys; Eric D. Mc Cullough, of counsel
and on the brief).

Frederick William Alworth argued the cause for respondent New Jersey Sports and Exposition Authority (Gibbons PC, attorneys; Frederick William Alworth and Douglas J. Janacek, on the brief).

PER CURIAM

Appellant Towers Associates, Ltd. (Towers) appeals from two October 18, 2018 resolutions of the Board of Commissioners of the New Jersey Sports and Exposition Authority (NJSEA) relating to the approval of a use variance permitting respondent MEPT Lincoln Crossing, LLC (MEPT) to construct a warehouse on its property. We affirm.

I.

The following facts are derived from the record. NJSEA is an independent authority created by statute with broad zoning authority over the Hackensack Meadowlands District (District), a 30.4-square-mile area in Bergen and Hudson Counties. See N.J.S.A. 5:10A-7 to -18; Infinity Broadcasting Corp. v. N.J. Meadowlands Comm'n, 187 N.J. 212, 215-16 (2006).[1]

MEPT owns a 19.9-acre parcel (the Property) in the District's Regional Commerce Zone zoned for commercial purposes, not including warehouses.

---

[1] The New Jersey Meadowlands Commission was merged into NJSEA in February 2015 by the Hackensack Meadowlands Agency Consolidation Act. N.J.S.A. 5:10A-1 to -68.

The Property is improved with a 236,207-square-foot building most recently used by the now-defunct clothing retailer Daffy's as a warehouse/distribution facility, corporate headquarters, and accessory retail outlet, which MEPT proposes to replace. The Property has been vacant since 2012.

Towers owns two adjacent lots, one of which is developed with a Home Depot and the other of which is undeveloped. A principal of Towers testified during a public hearing that it intends to develop the vacant parcel with a hotel, although no application for such development has been submitted to NJSEA.

A private roadway, Daffy's Way, traverses portions of the Property and Towers' parcels and is governed by a reciprocal easement agreement (REA) executed in 1992 by Towers and MEPT's predecessor in title. In the REA, each party granted to the other mutual and reciprocal easements for "vehicle and pedestrian ingress, egress and passage and re-passage over" the portions of the parcels on which the roadway is situated.

In 2015, MEPT filed a land use application with NJSEA for a use variance to construct a warehouse on the Property. On February 23, 2016, MEPT withdrew its 2015 application without prejudice.

In June 2017, MEPT filed another land use application with NJSEA seeking a use variance for the construction of a warehouse and distribution

A-1391-18T3

facility on the Property. The 2017 application, the approval of which is presently before this court, differed in significant ways from MEPT's 2015 application. The 2017 application featured a significant reduction in the proposed warehouse's size, a relocation of the proposed facility's loading docks and parking, changes to site circulation, and other revisions. Towers opposed the 2017 application.[2]

Over seven days in 2018, the NJSEA staff, comprised of a panel of engineers and professional planners, held public hearings on MEPT's application. Towers, through its counsel, appeared at each day of the hearings and cross-examined MEPT's experts, presented evidence, and called witnesses. After the hearings, NJSEA staff held the record open to allow MEPT and the objectors, including Towers, to submit written summations, despite such submissions not being typical of public hearings before NJSEA staff.

On August 24, 2018, NJSEA staff issued a fifty-one-page report recommending approval of MEPT's application, subject to several conditions.

Towers thereafter filed a notice of appeal with the NJSEA, challenging the staff's recommendations and seeking a hearing before the Office of

---

[2] Respondent Vee Jay International, which operates a hotel on a neighboring parcel, also opposed the application but did not participate in this appeal.

Administrative Law (OAL) in accordance with N.J.A.C. 19:4-4.19(b)(1) and N.J.S.A. 52:14B-3.2, a provision of the Administrative Procedure Act (APA). MEPT opposed the request, arguing Towers lacked standing to demand a hearing as a third-party objector.

On October 18, 2018, after receiving written submissions from Towers and MEPT, NJSEA adopted a resolution denying Towers' request for a hearing, concluding it did not have a sufficient particularized property interest affected by MEPT's application to grant standing to demand a hearing (the Hearing Resolution). NJSEA issued a detailed and comprehensive written statement outlining the reasons for its decision.

On the same day, in a separate resolution NJSEA adopted the staff's recommendation and granted MEPT the requested use variance subject to the conditions recommended by staff (the Variance Resolution). The conditions included MEPT: (1) providing an air quality plan for review that includes air quality monitoring provisions for a minimum of one year from completion of the building; (2) submitting an as-built noise evaluation within sixty days of completion of the building in order to show compliance with N.J.A.C. 19:4-7.3; (3) revising the site plan to eliminate seven trailer parking spaces, relocate the proposed guard booth, and include a sign prohibiting tractor-trailers from

utilizing the drive aisle through the parking lot; and (4) producing a plan to reconfigure the Daffy's Way driveway for enhanced two-way traffic flow to reduce the potential for conflicting movements between vehicles travelling in opposite directions. The Variance Resolution attached and incorporated the staff's report, which comprehensively analyzed each factor in N.J.A.C. 19:4-4.14(e)(2) as prerequisites to the grant of a use variance.

This appeal followed. Towers raises the following arguments.

POINT I

TOWERS HAD A CLEAR LEGAL RIGHT TO APPEAL THE STAFF RECOMMENDATION TO THE OAL FOR A HEARING SINCE IT HAD A PARTICULARLIZED PROPERTY RIGHT THAT WAS DIRECTLY AND NEGATIVELY AFFECTED BY THE GRANTING OF THE USE VARIANCE.

POINT II

THE NJSEA ERRED IN GRANTING A USE VARIANCE AS THE APPLICANT UTTERLY FAILED TO MEET ITS BURDEN TO ESTABLISH ALL OF THE PRECONDITIONS FOR APPROVAL CONTAINED IN N.J.A.C. 19:4-4.14(e)(2) AND N.J.A.C. 19:4-1.14(f).

POINT III

TOWERS' DUE PROCESS RIGHTS WERE VIOLATED BY THE NJSEA STAFF AND THE NJSEA BOARD OF COMMISSIONERS BECAUSE NJSEA['S] STAFF'S COUNSEL BARRED CROSS-

EXAMINATION ON RELEVANT MATTERS, REFUSED TO PERMIT THE INTRODUCTION OF RELEVANT DOCUMENTS INTO EVIDENCE DURING THE HEARING AND BECAUSE THE NJSEA BOARD OF COMMISSIONERS ABDICATED THEIR RESPONSIBILITY TO REVIEW MEPT'S APPLICATION.

## II.

A "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993)). The scope of our review of a final decision of an administrative agency is limited and we will not reverse such a decision unless it is "arbitrary, capricious, or unreasonable, or . . . not supported by substantial credible evidence in the record as a whole." In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). When making that determination, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

7

> [Ibid. (citing In re Carter, 191 N.J. 474, 482-83 (2007)).]

We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue . . . ." Carter, 191 N.J. at 483 (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)). We will, however, generally "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009) (quoting Richardson v. Bd. of Trs., 192 N.J. 189, 196 (2007)). Substantial deference must be extended to an agency's interpretation of its own regulations, particularly on technical matters within the agency's expertise. In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004).

### III.

Under the APA, an "applicant" is entitled to request an adjudicatory hearing with respect to a decision by the NJSEA on its application for a use variance. The APA defines "applicant" as an entity seeking an "agency license, permit, certificate, approval, chapter, registration[,] or other form of permission required by law . . . ." N.J.S.A. 52:14B-3.2. Where an applicant files an appeal from an NJSEA staff recommendation, the appeal is transmitted directed to the OAL for a hearing. N.J.A.C. 19:4-4.19(b). An appeal filed by a non-applicant,

however, may not be forwarded to the OAL for a hearing unless the NJSEA determines the non-applicant has a sufficient interest as defined by the APA. N.J.A.C. 19:4-4.19(b)(4).

The APA prohibits any state agency from adopting a regulation that gives a "third party" the right to appeal a permit decision in a contested case hearing at the OAL. N.J.S.A. 52:14B-3.3(a); N.J.S.A. 52:14B-3.1(d). A third party is defined as any person other than:

> a. An applicant . . . .
>
> b. A State agency; or
>
> c. A person who has a particularized property interest sufficient to require a hearing on constitutional or statutory grounds.
>
> [N.J.S.A. 52:14B-3.2.]

Accordingly, a non-applicant can demand an adjudicatory hearing only where the non-applicant can demonstrate: (1) a right to a hearing under an applicable statute; or (2) a "particularized property interest of constitutional significance that is directly affected by an agency's permitting decision." In re NJPDES Permit No. NJ0025241, 185 N.J. 474, 481-82 (2006). "[T]hird parties generally are not able to meet the stringent requirements for constitutional standing in respect of an adjudicatory hearing." Id. at 482.

These limitations are "intended to prevent the processing of permit applications by State agencies from being bogged down by time-consuming and costly formal hearings" which "consume substantial public and private resources." In re Riverview Dev., LLC, 411 N.J. Super. 409, 424 (App. Div. 2010). As the Legislature found, giving third parties the right to hearings would "give rise to a chaotic unpredictability and instability that would be most disconcerting to New Jersey's business climate and would cripple economic development . . . ." N.J.S.A. 52:14B-3.1(c).

Having considered the record in light of the applicable legal precedents, we affirm the Hearing Resolution for the reasons expressed in the comprehensive written final agency decision accompanying the Resolution. R. 2:11-3(e)(1)(D). We add the following comments.

Towers concedes it is not an applicant before the NJSEA. It argues it has a statutory right to a hearing on MEPT's variance application because: (1) increased truck traffic on Daffy's Way will directly affect the viability and efficiency of the business on Towers' adjoining property and the future development of its vacant parcel; and (2) its rights under the REA will be affected by the reconfiguration of a curbed island within Daffy's Way on MEPT's property and the increased costs of repairing and maintaining Daffy's

Way as a result of MEPT's proposed use. We agree with the NJSEA's final determination that none of those purported interests are sufficient to create a right to a hearing.

"[L]andowners objecting to the development of neighboring property" do not, by proximity alone, "have a particularized property interest warranting an adversarial hearing before an administrative law judge." In re Freshwater Wetlands Gen. Permits, 185 N.J. 452, 470 (2006) (citing Spalt v. DEP, 237 N.J. Super. 206, 208-11 (App. Div. 1989)). Our courts have consistently held that a generalized property right shared with other property owners, such as collateral economic impacts, traffic, views, quality of life, recreational interest, and property values, are insufficient to establish a third-party right to an adjudicatory hearing. In re Freshwater Wetlands Gen. Permits, 185 N.J. at 470; In re Riverview Dev., 411 N.J. Super. at 429; In re AMICO/Tunnel Carwash, 371 N.J. Super. 199, 212 (App. Div. 2004); In re Waterfront Dev. Permit No. WD88-0443-1, Lincoln Harbor Final Dev., 244 N.J. Super. 426, 436 (App. Div. 1990); Normandy Beach Improv. Ass'n v. Comm'r, DEP, 193 N.J. Super. 57, 61 (App. Div. 1983).

The record supports NJSEA's determination that Towers' expressed interest in the impact of increased traffic on Daffy's Way on its tenant's business

is a generalized property right not of the type creating a right to an administrative hearing on MEPT's variance application. The same is true for NJSEA's conclusion that Towers' argument the Variance Resolution will adversely affect the future development of its vacant parcel is speculative and, thus, legally insufficient to create a right to a hearing.

In addition, the record supports NJSEA's determination that, although Towers has a property interest in the REA, that interest is not directly affected by the Variance Resolution. As the agency aptly explained,

> While Towers undoubtedly has a property interest in the REA, that interest is not weakened by the grant of a variance to MEPT. Towers['] rights under the REA remain subject to enforcement in an action in Superior Court. Since the variance does not enable MEPT to violate its obligations under the REA and because Towers is still entitled to initiate an action under the REA to enforce such obligations, the NJEA's grant of a variance does not "impact" whatever constitutional rights Towers has with respect to the REA.

If, as Towers claims, MEPT's proposed use of its property, realignment of a portion of Daffy's Way, and other improvements to the roadway violate the REA, Towers can pursue available remedies under the agreement. The NJSEA variance approval process is not the appropriate forum for resolution of any disputes MEPT and Towers may have with respect to the scope of their rights under the REA.

IV.

Our review of the record revealed ample support for NJSEA's issuance of a use variance to MEPT. We therefore affirm the Variance Resolution for the reasons expressed in the extensive and detailed written decision of the agency. R. 2:11-3(e)(1)(D). NJSEA adopted its staff's report that exhaustively addressed each of the preconditions for approval set forth in N.J.A.C. 19:4-4.14(e)(2) and (f), considered Towers' objections, and included written findings of fact supported by the record. We defer to the agency's expertise where, as is the case here, the record fully supports its decision.

We have carefully considered Towers' remaining arguments, including its claim to have been denied due process, and conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION